Filed 8/13/26  In re N.H. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.H. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>              v.<br><br>S.O.,<br><br>    Defendant and Appellant. | F090766<br><br>(Super. Ct. Nos. JD145483-00, JD145484-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Kendra L. Graham, County Counsel, and Kelli R. Falk, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]    Before Detjen, Acting P. J., Meehan, J. and Guerra, J.

-ooOoo-

S.O. (mother) is the mother of N.H. and D.H. (collectively, the children), who are the subjects of this dependency case. Mother challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in her parental rights being terminated. Mother contends the court and the Kern County Department of Human Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and its state counterpart. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In February 2024, the department filed a dependency petition alleging the children were described by section 300, subdivision (b)(1) (failure to protect). The allegations involved ongoing domestic violence between mother and her boyfriend. During the department's initial investigation, mother reported potential Indian[3] ancestry through the maternal grandmother, but she did not know the identity of the tribe. D.H.'s paternal grandparents requested placement of the children, and they denied having any Indian ancestry.

At the detention hearing held on February 14, 2024, mother was present and appointed counsel. The juvenile court found E.R. was the presumed father of N.H. and L.H. was the presumed father of D.H. Both of the children's fathers were deceased.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

[3] "[B]ecause ICWA uses the term 'Indian,' we [may at times] do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1, disapproved in part on another ground in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18.)

2.

L.H.'s mother, I.R., was present for the detention hearing. I.R. and her husband requested placement of the children.

Prior to the juvenile court's inquiry, mother's counsel stated, "mother does have possible Native American ancestry through her mother, but she doesn't have much information. Her mother passed away before she could really question her on that issue, and she doesn't have contact with any other family members on that side."

The juvenile court then inquired of mother and I.R. regarding potential Indian ancestry in their families. Mother explained that the children's maternal grandmother was "half American Indian," but she was deceased. The court obtained the maternal grandmother's full name and birth state. Mother did not know which side of the family the maternal grandmother's ancestry came from. The maternal grandmother did not have any living brothers or sisters as far as mother was aware. The maternal grandfather never wanted to talk about the maternal grandmother's family. Mother denied that the maternal grandfather had Indian ancestry. The court asked if she could provide any more information about the maternal grandmother, but mother responded in the negative. I.R. denied there was any Indian ancestry in L.H.'s family.

After completing its inquiry, the juvenile court found there was reason to believe the children may be Indian children based on mother's claim of Indian ancestry. Mother was instructed to inform the court if she received any information that provided a reason to know the children were Indian children. The court detained the children from mother's custody, and a combined jurisdiction and disposition hearing was set for April 9, 2024.

Mother signed a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form, indicating her mother, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe. The maternal grandmother was identified as the relevant ancestor, but she could not identify a tribe.

The department's jurisdiction report recommended that the allegations in the original petition be found true. On May 22, 2024, the juvenile court sustained the

allegations in the original petition, and the disposition hearing was continued to June 27, 2024.

The disposition report recommended that the children remain in out-of-home care and family reunification services be provided to mother. The ICWA section of the report indicated the department's inquiry was pending. On May 22, 2024, mother clarified that her paternal grandmother told her that the maternal grandmother had Indian ancestry. The maternal grandmother and maternal great-grandmother were deceased, and mother stated no one else would have information regarding the ancestry.

The disposition report provided details of the social worker's family finding efforts to contact several extended family members in February 2024 and March 2024. The social worker made unsuccessful attempts to contact the children's maternal cousin, adult sibling, C.H., maternal grandfather, E.H. Sr., and maternal great uncle, E.H., Jr.

The children's adult sibling, Melanie O., provided minimal information regarding extended family members and denied having Indian ancestry. The children's maternal aunt, Maria H., reported possible Indian ancestry from her maternal family. Maria explained that the maternal grandmother and maternal great-grandmother were deceased, and she provided minimal family information. Maternal aunt, Janet H., denied having Indian ancestry. Multiple paternal relatives also denied having any Indian ancestry.

On June 27, 2024, the department filed a declaration of its paralegal regarding its ongoing ICWA inquiry. The declaration detailed the inquiry into mother's reporting of Indian ancestry through an unknown tribe. A "NOTICE OF CHILD CUSTODY PROCEEDING FOR INDIAN CHILD" (ICWA-030) form was sent to the Bureau of Indian Affairs (BIA) and Department of Social Services (CDSS) on June 26, 2024 by certified mail. The paralegal also attached the notice to an email, which requested assistance in identifying the names and contact information for the unknown tribe that the children might be members or eligible for membership.

4.

The notice included the full names for mother, maternal grandparents, and a set of maternal great-grandparents. The maternal grandmother and maternal great-grandmother's dates of birth were provided without a year, and tribal affiliation was listed as "Uknown." Responses from the agencies were still pending at the time of the declaration's filing.

At the continued disposition hearing held on June 27, 2024, the juvenile court ordered the children removed from mother's custody and family reunification services were provided to mother. The court considered the department's report and ICWA declaration, and it found there was no reason to know the children were Indian children due to the absence of a tribe's name. The court also confirmed that the department had a continuing duty to inquire. A six-month review hearing was set for December 20, 2024.

In its report for the six-month review hearing, the department recommended family reunification services continue for mother. A Family Finding social worker made contact with several paternal relatives for N.H., and each of them denied having Indian ancestry. At the six-month review hearing, the juvenile court ordered continued family reunification services, and a 12-month review hearing was set for April 9, 2025.

The department's report for the 12-month review hearing recommended the juvenile court terminate reunification services and set a section 366.26 hearing to consider a permanent plan of adoption. On June 25, 2025, at a contested 12-month review hearing, the court terminated mother's family reunification services and set a section 366.26 hearing for October 22, 2025.

On October 21, 2025, the department filed a supplemental declaration of its paralegal regarding its ongoing ICWA inquiry. The declaration provided a copy of the response from the CDSS to the department's June 2024 inquiry. The email response from a Central ICWA Field Liasion with CDSS stated, "there is not much more direction we can provide for an 'unknown or unidentified' Tribe." The department did not receive a response from the BIA.

The department's section 366.26 report, filed October 10, 2025, recommended that the juvenile court terminate parental rights and order a permanent plan of adoption for the children. At the section 366.26 hearing held on October 22, 2025, the court found an adequate inquiry of tribes and relatives had been conducted, and there was no reason to know or believe the children were Indian children.

In making the ICWA finding, the juvenile court stated as follows: "no specific tribe has been identified by the family, but some unknown Native American heritage has been asserted. And so inquiries have been made to the [BIA] and the [CDSS] as required by law. The [CDSS] responded promptly and said there was no tribe that they could identify, despite three inquiries to the [BIA] on June 26th and December 13, 2024, and October 17, 2025. They have not responded, but that is par for the course with the [BIA]. So I'm going to find there is no reason to believe or know that the children are Indian children. There has been an extensive inquiry of relatives and the [d]epartment has complied with the act."

The juvenile court proceeded to terminate mother's parental rights and selected a permanent plan of adoption for the children.

## DISCUSSION

Mother claims the juvenile court and the department failed to adequately discharge their duty of further inquiry because the record does not reflect that mother or extended family members were asked about the identities of the maternal grandfather and maternal great-grandparents. The department contends that its inquiry was adequate.

### A. Applicable Law

Under ICWA's state analogue, Cal-ICWA (§ 224 et seq.), the juvenile court and the department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court, rule 5.481(a).) The department's initial duty of inquiry includes "asking the child, parents, legal

6.

guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child....”  (§ 224.2, subd. (b)(2).)

When initial inquiry gives rise to a “reason to believe” (but not sufficient evidence to determine there is a “reason to know”) that an Indian child is involved in a proceeding, “further inquiry regarding the possible Indian status of the child” is required, which includes gathering additional biographical information from family members and contacting relevant tribes.  (§ 224.2, subd. (e)(2)(A)–(C).)  “Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination, as well as information on the current status of the child and the case.”  (§ 224.2, subd. (e)(2)(C).)

The final duty component arises when the juvenile court or department has “ ‘reason to know’ ” the child is an Indian child.  (*In re D.F.* (2020) 55 Cal.App.5th 558, 567.)  A “reason to know” exists if one of the following circumstances is present: “(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child’s parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe.”  (§ 224.2, subd. (d)(1)–(6).)

The department “must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child’s Indian status, as well as evidence of how and when this information was provided to the relevant tribes.”  (Cal. Rules of Court, rule 5.481(a)(5).)

Before finding ICWA inapplicable, the juvenile court must make a finding that the department conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2).)

### B. Standard of Review

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child under a substantial evidence standard, and the court's finding that the department has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601 (*K.H.*); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005 (*Ezequiel*).)

Regarding the juvenile court's discretion in evaluating the department's inquiry efforts, this court explained in *K.H.*, "so long as the [department] conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the [department's] efforts are sufficient to satisfy the mandates of ICWA and related California law." (*K.H.*, *supra*, 84 Cal.App.5th at p. 604.) "The [department's] inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*Ibid*.)

An inadequate inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the department to conduct an adequate inquiry, supported by record documentation. (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1136.)

### C. Analysis

First, we will address mother's assertion that the department did not submit a copy of the ICWA-030 notice form that was provided to the BIA and CDSS. As the department points out, the notice forms were attached to the declaration of the department's paralegal, and these forms were included in the present record. Thus, we reject this contention.

Next, mother contends the department's inquiry was inadequate because the department did not document its efforts to obtain the full names of the maternal grandfather and maternal great-grandparents. In the ICWA-030 forms sent to the BIA and CDSS, the department provided the full names of the maternal grandfather and a set of maternal great-grandparents. The department's reports and declarations identified several interviews that were conducted with maternal relatives. The reports noted that maternal family members were only able to provide minimal information. Mother acknowledged that she did not know any additional information, and she insisted that no other family members would have information about the family's Indian ancestry with an unknown tribe.

The department cannot force individuals to divulge family information, and it is not required to undertake exhaustive investigative searches. " 'So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*In re E.C.* (2022) 85 Cal.App.5th 123, 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) Mother's suggestion that the inquiry was inadequate because the department failed to learn the full names of all maternal great-grandparents is without merit.

As recently explained in *In re H.B.* (2023) 92 Cal.App.5th 711, the section 224.2, subdivision (b) extended family member inquiry "is not intended to obligate county welfare departments to search for possible Indian ancestry without regard to cost or other practical considerations. Rather, it is intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work.' [Citation.] Despite its broad terms, section 224.2, subdivision (b) does not require inquiry with every adult living extended family member. … Our review is therefore not a mechanistic analysis of whether the record supports a finding of literal compliance with the statute, but 'whether the ICWA inquiry conducted has reliably

answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding "is or may be an Indian child." ' " (*Id*. at p. 720, citing *Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009.)

Section 224.2, subdivision (b) does not "specify how many extended family members the [department] must interview." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1007.) And "given the statute's expansive language and the vagaries of the extended family information parents are willing or able to provide, determining compliance with ICWA requires a significant exercise of discretion." (*Id*. at p. 1006.) Accordingly, "the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the [department]'s ICWA inquiry has yielded reliable information about a child's possible tribe affiliation." (*Id*. at p. 1009.) Here, the department documented that it undertook family finding efforts for both maternal and paternal relatives, and the attempts to contact those relatives were contained in its reports. The inquiry yielded reliable information about the child's possible tribal affiliation through the deceased maternal grandmother, and there were no other relatives that were identified as having additional information.

In sum, we conclude mother has failed to demonstrate the juvenile court and the department failed to comply with their duty to inquire. The department's efforts were sufficient under the circumstances of this case, where there was no evidence that the unknown maternal great-grandparents' identities were either known or provided by the family. The department documented its inquiry of several maternal family members, and it shared the biographical family information with the BIA and CDSS. We therefore conclude the department's efforts were sufficient to fulfill the duty of inquiry, and its documentation gave the court an adequate basis for finding it had done so and that ICWA does not apply.

## DISPOSITION

The order is affirmed.